Next case on our call is Agenda No. 8, No. 130033, Terrence Lavery v. Department of Financial and Professional Regulation. Counsel for the appellant, are you prepared to speak? Good morning, Madam Chief Justice. It is my honor to introduce the Court of Assistant Attorney General for the Segal on behalf of the Illinois Department of Professional Regulation. Your Honors, this Court should reverse the appellate court's decision which departs from this Court's long-standing jurisprudence about sovereign immunity on three distinct grounds. First, noted in Section 15 of the Mental Health and Developmental Disabilities Confidentiality Act, is there a waiver of sovereign immunity in the provision of attorney fees and costs that allows the receipt of attorney fees and costs after a procedure like this pursuant to 740 ILCS 110-1 and 2. Now, the appellate court did not address this aspect of the Act, but at essence here is the language of Section 15. That is to say, we are faced with a statutory question and the usual starting point in such cases is the statute. Now, apart from the statutory language of Section 15, the appellate court did improperly conclude in two parts. First, the officer's student exception to sovereign immunity applies to a forward-looking adjunctive-type remedy which attorney fees and costs in no sense are. And third, the appellate court improperly failed to recognize that the plaintiffs did not identify an individual, an actual person, not the department itself, who acted illegally beyond the scope of his or her authority. And if the court does not have a different preference, I will address these issues in order. First, as to the statutory language, this Court has long held for nearly a century that a statute must expressly indicate in affirmative language the General Assembly's intent to waive sovereign immunity. Not only that, the waiver must be clear and unequivocal. The provision at issue here, Section 15 of the Act, contains no such affirmative, clear, and unequivocal waiver of sovereign immunity. Indeed, nowhere in Section 15 is the statement mentioned. And that stands in direct contrast to other statutes that do waive sovereign immunity explicitly. Nor does Section 15 meet the standard that this Court set forth in Parmar v. Madigan that a statute cannot use only general terms. It must instead contain an expressed intent to subject the state to liability. Now, with both of these tenets in mind, it's impermissible, also under the plain language analysis that this Court employs in analyzing statutes and sovereign immunity principles, to read into the presence, into the statute rather, the presence of language that is not there itself. And it's just not there in Section 15. Instead, that provision states only that, quote, reasonable attorneys' fees and costs may be awarded to the successful plaintiff in any action under this Act. Again, it doesn't say anything about the successful plaintiff versus a defendant who is a state actor. If the state is a defendant, no attorney fees or costs are available due to basic principles of sovereign immunity. By contrast, there are, of course, statutes, again, not at issue here, that contain the affirmative, clear, and unequivocal waiver of sovereign immunity. One example is the Illinois Educational Labor Relations Act. And it states that, quote, for purposes of this Act, the state of Illinois is sovereign immunity. Likewise, the Illinois Toll Highway Act provides that the state of Illinois hereby consents to certain suits against the authority. But it does not follow that the plaintiffs insist that we can glean from Section 15 an affirmative, clear, and unequivocal legislative intent to waive sovereign immunity. To discern that, this Court would have to abandon its principle that exceptions, conditions, or limitations that the legislature did not express cannot be read into the statute that contravenes this Court's principles. So, in short, the absence of any statutory waiver here compels evidence. And it compels the conclusion that the General Assembly did not intend to waive our state's immunity in this piece of clause provisions. Now, moving on from the statutory issue, this Court should also conclude that the appellate court incorrectly decided the officer suit exception issue. And there are two distinct problems here. Each one supplies an independently sufficient basis to reverse the appellate court. First, the officer suit exception applies only if a plaintiff seeks to enjoin future conduct alleged to be contrary to law. As this Court recently stated earlier this year in its Walker decision, future conduct or forward-looking relief is the key, but monies that are to be expended to pay for past wrongs do not count. Right here, the plaintiff's claims for attorney's fees collapses. Attorney fees and costs are backwards-looking. Your opponent says, well, yeah, but this is all ancillary. It's all related. So, you know, attorney's fees are paid, and perhaps that will help, you know, be part of the enforcement of prohibitive fees. Well, that's just incorrect on a couple of different bases. Attorney fees are not available in so many civil remedies statutes in Section 740 ILCS Code, for instance, and yet dozens of suits are brought in this state daily, some component of which are seeking injunctive relief. It's hard to believe that a provision for attorney's fees, as the appellate court implied in its decision, is necessary and part and parcel of the injunctive relief itself. That's a required incentive for somebody to vindicate their rights in this manner. And there's a line of cases that we have cited where, by distinction, the monetary recovery, the attorney fees in one of them perhaps, but more to the general point, the payment itself is the order. It is the injunction. And so the appellate court's decision in Wilson that involved a stipend that the governor did not believe had to be paid, when the court ordered it paid, the stipend itself was ancillary, that is, it facilitated, it was part and parcel, inextricably intertwined with the order. That's not what we have here because no one is compelled to seek fees. There may be parties under this Act who obtain a protective order. They never seek fees when it's private party versus private party. It's not compelled or required. They're separate and distinct. And it's not forward-looking relief because such fees compensate an attorney and his or her firms for work they did in the past. When a circuit court considers a fee petition, it's looking at work done and accounted for and billed. It's not a future-looking order of the lump sum. That would be nice for the pointless part, but you don't get paid in advance for work under attorney fee provisions. And this court has implicitly held that this is the nature of attorney fees in its state ex-rel shag-versus-my-pillow case, where the court held that a prevailing party's lawyers for work performed at the successful conclusion of litigation could be compensated. Again, not forward-looking. Even if the plaintiff's claims for attorney fees can be correctly characterized as a present claim to address a past wrong, that characterization fails this court's distinction between present and past claims and future claims. Our present claim also is not forward-looking and does not invoke the officer-suit exception to sovereign immunity. Finally, on this point, as Your Honor mentioned, ancillary is just a monitor that the plaintiffs and the appellate court have seized upon, but it's a non-starter because, as I mentioned, you don't have to get fees. It's optional. You can recover without them. So there's no inextricable connection between, one, the fees and the order itself, the protective order in this case. Indeed, in this court's decision in Leetaro, the plaintiff, a student at the University of Illinois, obtained an injunction, a forward-looking order, to prohibit state actors and individuals at the university from interfering with his due process rights. It didn't follow under the statutes at issue there, certainly not automatically, that because he obtained an injunctive order that he was then entitled to attorney fees. So this forward-looking issue is an independent basis permitting this court to hold that the officer-suit exception does not apply in this case. But even if this court does determine that there's a forward-looking aspect to attorney fees, the plaintiffs fail to meet the second threshold requirement of the officer-suit exception, and that's an allegation that a state officer's conduct either violates the law or exceeds his or her duties. The act has to be, in essence, ultra-virus, something abracious. Before we consider the alleged illegal conduct itself, which actually really hasn't been alleged to the individual plaintiff, there's a fatal flaw to the plaintiff's argument, one they have yet to address and maybe won't hear about in a moment. They haven't identified the actor, the individual. Who is it? Who is the single person on record whom they allege acted beyond his or her authority or illegally? And nor did the appellate court directly identify this critical but mysteriously missing person. That individual did not exist. Counsel, didn't the appellate court in this case agree with the Gray case in that they said just because money, a successful action will cause money to be paid from the state's treasury doesn't mean that the state is the actor against whom the action was brought? The court tried to make that distinction. Isn't that right? The court did try to make that distinction, Your Honor. Gray is an anomaly, and there is a separate case in the first district appellate court that the appellate court did not follow called Shemp. Well, there are two cases. Shemp says one thing and Gray says another, and the appellate court in this case decided to follow Gray. So I guess the appellate court thought that Shemp was the anomaly. Correct, Your Honor. The problem with Gray, one of the problems with Gray, is that it relies on the fifth district's case, Wilson, which I discussed a moment ago. But Wilson differs from our case, and arguably from Gray, because the money that the state would pay, that the state would be required to pay to Wilson. Counsel, isn't the appellate court, respond to the appellate court's comment in this case. It says the ancillary award of fees is necessary to make it practicable for citizens to assert a claim to stop a state actor from illegal conduct. Can you respond to that? Is that a legitimate concern? And was the appellate court incorrect in saying that? The appellate court was correct in two different regards. First, as to your initial question, Justice Cunningham, it's contrary to this court's 90 years of precedent to hold that payment from the state doesn't necessarily violate the precepts of sovereign immunity. That's the purpose of sovereign immunity. That holding is anomalous and inconsistent with this court's jurisprudence. As to your question about whether the payment of fees is ancillary or part and parcel of the fee award, it's not, because it's optional to seek fees. And there are many, many statutes in the civil code that do not contain fees, and yet we follow, in this state, the American rule, whereby plaintiffs, by and large, are responsible for the cost of litigation. So the appellate court, in some ways, was rewriting- Well, what about the practicality of citizens exercising their right to stop illegal conduct by someone who is purporting to act on behalf of the state? And your question is whether or not, in that instance, attorney fees should follow from the issuance. I'm just saying, isn't it part and parcel of the whole action? No, it's not necessarily part and parcel of any action for declaratory or injunctive release, because there are many statutes that don't provide it, where the General Assembly didn't see fit to create a fee award for the successful plaintiff who prevailed against a private defendant. So we disagree with that ancillary characterization. Returning to the problem with the failure to identify an individual, only a person can do the things that the appellate court sees upon under this court's long-standing sovereignty by the cases. The department is not a person, cannot be the actor who acts a gracious claim in violation of the law or exceeds specific individual duties. So you're saying that an individual or the lawyer should have been named, or somebody named in their individual capacity, and therefore, because they didn't, then the party gets no attorney's fees. Is that what you're saying? In part. Let me go back. I'm not saying that the department's attorney should have been named because she did anything wrong, but in line with this court's long-standing precedent, putting aside the homogeneity of tarot... Well, under these facts, someone was insisting that the notes be turned over when it became, I think the term that was used, doggedly, dogged determination, when it became clear that the notes probably weren't discoverable. Are you saying that that person should or should not have been the person that was named? It would have been very easy to name an individual affiliated with the department. Justice Kala Littaru named both the board of trustees and also an assistant vice chancellor as defendant. The department's leadership is not a secret. It's posted on the website. We can all figure out who the director is. And on the website, as I looked the other day, many different division directors. I'm not in the habit of suggesting that my clients be sued, but it would have been quite simple to name an individual. So under that scenario, what would happen to the attorneys' fees issue? In that scenario, there would have had to have been allegations of abrecious ultraviolent wrongdoing, not simply an adjudicated adversarial proceeding to determine whether a protective order should have been issued. But on the surface, the requirement of naming an individual would have been satisfied. Whether or not there could have been claims of wrongdoing, under the Office of Sued Exception, is speculative. But that did not happen here. And so because there was no identified wrongdoing individual, the Office of Sued Exception does not apply. And just to highlight what the appellate court said in this regard, the appellate court attributed human characteristics to an agency. You already alluded to that, Justice Cunningham. The appellate court held that, quote, the department knew that the documents might be privileged, resisted the plaintiff's efforts to settle that question, and doggedly persisted in its demand for their production. That's in the appellate court's decision in paragraph 42. Only people can act this way, not inanimate inert departments and agencies. In short, the Office of Sued Exception does not apply, and no amendments can cure the complaint's essential and fatal defects at this point. There is no basis to remand this case for amendments. And it couldn't be cured by adding the director of the department in his official capacity or something that would not cure it? Well, it would not cure it based on my understanding of the record because we haven't heard, seen, or gleaned from the record what the director of the department did in violation of his duties. It's not simply that there are two things that have to happen, Your Honor. An individual must be named, and the complaint must allege the extralegal, gracious acts by an individual. Your Honor, as I see my time is up, I will move back on rebuttal. Thank you. Good morning, Your Honor. As may it please the Court, my name is Rick Schoenfeld, and I represent the plaintiff's affiliates in this case. First, obviously, the department can only act through its individual officers and employees. Would it have made a difference in this case if we had named one? No. The case would have proceeded as it did. The fact is there was an improper demand for privileged documents. The department finally, at oral argument, conceded that they should have agreed to it in oral argument in the appellate court. At last conceded they should have agreed to an in-camera inspection instead of resisting it every step of the way. Had they done that, we would not be here. Could I focus on that for a moment? I think everyone agrees that the key here is have you pled and shown that there was an unlawful and without legal authority action by the department. Those are the terms of our use, unlawful and without legal authority. So here department lawyers in an adversarial hearing before the administrative law judge made an argument that the act did not apply to these documents. And obviously you or someone on behalf of the other side argued that the act did apply. The LJ agreed with the lawyers for the department. And then another action was filed in the circuit court, and the circuit court disagreed with the finding of the ALJ and instead found that the act did apply to these documents. So if we're looking for – I'm asking you, what was the unlawful or without legal authority action by the department? Are you saying that making an unsuspecting argument in a contested hearing is unlawful? I'm saying that making an argument that is clearly contrary to the law to demand that documents in which a privilege has been claimed should be turned over without an in-camera inspection, that violates this statute. That is what the circuit court and the appellate court found. Who makes the decision? Who makes the decision of whether or not these documents come within the act? A judge, right? An ALJ or a judge sitting in the circuit court of Cook County. That's who makes that decision, right? No, Your Honor. The judge did not say that the documents did not come within the act. The judge made up his own rule that you had to provide an affidavit in support of your claim that a document was privileged. I've been doing – And the circuit court disagreed with the ALJ. Well, and I think – What is unlawful about a lawyer making an argument in a contested hearing that is later shown or later another higher court determines was that that claim was unsuccessful? Why is that unlawful? Because the statute says so. This is not a matter – This isn't even a matter of a common law privilege. This is a matter of the legislature passing a statute which says that these therapist notes are privileged and privileged in specifically, among other places, in administrative hearings and further providing that a violation of the statute, if it aggrieves parties in the case, entitles them to relief, including attorneys' fees, which I will discuss, which are ancillary relief. And so the – So the department itself – I'm sorry. The unlawful – unlawful – Yes. That's a pretty strong word. Unlawful act here that the – There apparently is some controversy on this issue since the ALJ ruled one way and the circuit court ruled a different way. So there's some controversy here. The – What the court ruled – What the court ruled, circuit court and then the appellate court, was that there was a duty on the part of the department not to be making a claim that it – that was clearly illegal. The ALJ, as I said, made up his own procedure that simply asserting a privilege was insufficient. It had been asserted from the stand to begin with by Mr. Waverly while under oath. He didn't say it in exactly an articulate legal manner, but he asserted that these were his notes. But you're not – I think it says in the appellate court you conceded. You're not saying the ALJ acted unlawfully, even though you're saying this decision was made up by the ALJ. You're not saying that the actions of the ALJ was unlawful. It was the lawyers arguing on behalf of the department that were unlawful. Is that right? We did not bring a claim against the ALJ and start dealing with issues of judicial immunity. What he did was actually improper and unlawful, but that's not our case. Our case is that the department, by pursuing these documents, was violating the statute. And the legislature obviously was concerned that – concerned to stop parties from trying to obtain these privileged documents in violation of the statute. Otherwise, the legislature would not have created the statute, which, number one, said they're privileged in all of these various proceedings, which include proceedings where the State is obviously going to be involved. And, two, that it went beyond just saying they're privileged. It then said if a party is aggrieved by a violation, the party is entitled to relief, including, my word, ancillary attorney's fees. If it wasn't for the statute, we would not be here. If this was a common law privilege, we would not be here because there's no provision for this kind of relief. But here, this is based upon the legislature's passing this particular statute. And what's the point of it saying that if a party is aggrieved by a violation, it's entitled to money damages, which we're not claiming, which would be a different case, and attorney's fees and costs? It did that to stop people from trying to obtain privileged documents, including, and they don't contest this, State administrative hearings, State legislative hearings, State judicial hearings, and the State they don't contest is subject, and when I say the State, I mean the Department here, is subject to honoring that privilege. They have no right to breach that privilege. And when it went to an in-camera inspection, every document we submitted was deemed to be privileged. Did they argue that was wrong? No. Did they appeal that was wrong? No. Did they appeal that the finding that my clients were aggrieved by a statutory violation was wrong? No. So they have no right to be even arguing that here. Did they appeal that there was no, so their argument that no illegal conduct has been changed? What, they have no right to do that. There was a finding. There was a judgment against them. They did not appeal that part of the judgment. They did not appeal that finding that my clients were aggrieved by a statutory violation. The only thing they brought up when they brought the appeal was sovereign immunity. Their argument has been blossoming and expanding in this Court. If I may, quickly, let me just mention, I find it surprising that counsel did not mention they're asking you to overturn a decision in Leetaru, which goes to their argument about individuals. Would it matter? Would this case have proceeded in the same way if I had named the director? Yes. If I had named the lawyer? Yes. If I had named someone who the lawyer was in communication with? Yes. Within the same place. Now, as to the issue of ancillary, counsel's argument really does not comport with the intrinsic nature of ancillary relief as it has been treated for years by courts in Illinois. There's a string of appellate court cases in our brief which say statutory attorney's fees are ancillary relief. There's also a Supreme Court case, Feinbaum v. McGovern, we cited, which says that ancillary relief does not create a cause of action. This is a critical point. Ancillary relief does not create subject matter jurisdiction. Why is this so important? Because sovereign unity, which is what this appeal is supposed to be about, sovereign unity blocks subject matter jurisdiction. Therefore, I submit to you that since ancillary relief has nothing to do with subject matter jurisdiction, the subject matter jurisdiction case stems from the violation of the statute in seeking the privileged documents. Sovereign unity cannot have any application to ancillary relief because while sovereign unity blocks subject matter jurisdiction, ancillary relief is not where the subject matter jurisdiction comes from. The Rodriguez case that this court decided, while not exactly on point, is instructive. In that case, there was a fee provision in the statute which the plaintiff could have utilized after winning the substance of the case. They waited too long, so they filed a separate cause of action. And this court said, you can't do that. You had to file in the case in which the original case, not a separate case. What was that all about? It was because the provision for attorney's fees did not create a cause of action, separate cause of action. Therefore, it did not create subject matter jurisdiction to file a new case. And therefore, that case was dismissed as being untimely. Now, as to, under, as to an individual, as to showing which particular individual said yes, keep demanding in the department, said yes, keep demanding the documents, Leetaro said that we can sue the department as the defendant. It would certainly seem, therefore, that we don't have to say who in the department did it, as long as the department violated the statute, since they're a proper defendant. And again, I stress, they didn't appeal any of this. And this is not a matter of sovereign immunity. This is a pleadings issue and a proof issue, which they have long since waived, and actually are barred at this point because they didn't include it in the appeal. As to, as to the language of the statute, which is the second reason we're entitled to fees, one is, we don't have to establish both. We're entitled to fees if either were entitled to it on the, as ancillary attorneys' fees for violation of the statute. And I frankly don't understand the all-consensus argument that, well, it's just optional. Yes, we didn't have to ask for it, but it being optional doesn't deprive us of the right to ask for it. Second and separately, we can be entitled, we win, if you accept either of these arguments, we win because the statute waived sovereign immunity. Now, why do I say that in light of hard decisions? And I'll address one of them, the Walker case, which they cited. Walker, in its statute about interest and cost, said just because the word any is used here in this statute, that's not in and of itself sufficient. Now, let's keep in mind there was, ancillary relief was not involved. The statute itself was cost and post-judgment interest. So ancillary had nothing to do with it. Okay. What we learn from that is a simple, in a general statute, a simple use of the word any does not waive sovereign immunity. I accept that. That was your ruling. Of course I accept it. But here, it's different. It's different because the section of counsel in the statute that counsel did not mention when he talked to you, the substantive portion of the statute which says that these therapist notes are privileged in any administrative, legislative, or traditional proceeding or proceedings preliminary thereto. I submit to you that, and it said any there, that is a reference to state proceedings. And they didn't, if it wasn't a reference to state proceedings, they should have been arguing the documents weren't privileged in this case. They accepted, they acknowledged finally the documents are privileged in this case. That means that the department was bound by the substantive law in the statute that in any administrative, etc. proceeding, the documents are privileged. So that's a reference to the state of Illinois in the statute. Any administrative, legislative, or judicial proceeding is obviously a great number of those proceedings are proceedings by the state. The statute then goes further in its use of the word any. As it reiterates any a total of three times. And that makes it different than the other cases in which just the simple general statement any person is insufficient. Because here you have a reference that includes a multitude of state proceedings. And you have an emphasis on the use of the word any. May I ask a couple of questions? Please. Walker certainly is a case that you mentioned that plays out and obviously Lee Taru does too. In Walker there was some discussion really trying to figure out what is this lawsuit about? And is this the type of lawsuit that falls within this sovereign immunity or is it something else? And there's a talk in that case and some others about that certainly there's no bar, no sovereign immunity bar for someone to bring a claim against the state, the department, where the relief request is enjoining future conduct. And the court in Walker is trying to draw a line about okay, enjoining future conduct, that can go forward. But where there's some kind of remedy, the lawsuit is asking for some kind of remedy for past conduct, then that doesn't, that is barred by sovereign immunity. Is that a fair statement of how some of these cases look at it? Is this prospective or are we looking back for some kind of damages or remedy in the past? We're looking at certainly the prospect, I'll call it instead of officer's suit exception, I'll call it the prospective relief exception. So yes, and here prospective relief was we obtained a protective order and declaratory judgment saying, I'm not saying that these are protected, saying that the administrative action shall not, shall not, essentially I'm paraphrasing, shall treat these as privileged documents and period. That's the, that was the future prospective relief that we obtained. And this, and this then goes back to attorneys fees for ancillary relief. Of course, attorneys fees aren't, are not prospective relief, but they arise from the prospective relief that was granted through the protective order and the declaratory judgment that we obtained. If we had only sought money damages, in this case, you know, substantively, we would not be here for a number of reasons. We didn't seek money damages. Attorneys fees are not money damages for a violation of the statute. I hope I've answered your question, Your Honor. So that's the area that I was asking you to talk about, yes. Just as I. Anything else, sir? If you can bring your remarks to a close, you certainly can respond. Yes, just because I kind of stumbled on the other anys. In that second statute, to emphasize it, any person agreed by a violation of this act. And then it goes, fees and costs may be awarded to the successful plaintiff in any action. My point is that the legislature emphasizes the all-encompassing nature of what it is providing for by saying any three times, and there's a reference to state proceedings, a reference that they don't, that they never challenge in this case. That's different than the Walker case. Thank you. Thank you, Your Honor. Your Honor, it's not unlawful, ultraviolence, or wrongful for an ALJ to rule in favor of one party and against another party and maybe later be reversed by a court or for a judge to do that. And it's also not ultraviolence for an attorney to doggedly or zealously represent her client and vindicate that client's rights, even if that attorney or that ALJ has contravened policy or gotten the law wrong. In this Court's recent 2025 Walker decision, as opposed to the one that my colleague was mentioning, it held that not every type of wrongdoing invokes the Office of Sued Exception. Now, counsel still won't say exactly who the wrongdoer is we're hearing about in the department or maybe somebody in the department or the attorney in the department illustrating the futility of a remand for repleting. But the rule that he is arguing, that the plaintiffs are arguing for, is unwarranted, is unsupported, and it will undermine attorneys' abilities to zealously represent their clients because it won't go so far as to criminalize representation, but it will chill it and it will put attorneys in the position of being subject to acting wrongfully or ultraviolence or beyond the scope of their authority simply by offending their clients. The Rodriguez case that was mentioned is completely distinguishable from the situation here because it involved the Administrative Procedures Act, which, as the appellate court in Shem made clear, and this Court's holdings do as well, applies only against the state. And so we prevail under the Administrative Procedures Act and have a regulation declared unconstitutional attorneys be followed. Only the state passes and oversees regulations. Rodriguez is inexistent. The counsel mentioned would it have mattered if we just threw in the department on the caption and it wouldn't have made any bit of a difference, but it is all the difference here under this Court's sovereign immunity precepts that form and substance matter. If he had named an individual beside the department is what he said. That's to correct what I stated. Yes, it was necessary to name an individual who was the wrongdoer under the officer's suit. Exception. On the question of Walker from prior to 2025, from years ago, we were in special education of Walker. The Court rejected the very argument that is being asserted this morning about the word any in the statute, meaning that you can prevail against anyone, a municipality, a village, the state, because any is in there. That does not comport, again, with the types of provisions that I mentioned earlier, the Illinois Education and Labor Relations Board Act and the Illinois to Ohio Authority Act, where the legislature knows what it's doing and states explicitly in unambiguous terms that it intends to waive sovereign immunity. And any, the word any, which appears in a different provision outside Section 15, does not follow. Looking at that language in a different provision doesn't follow. This Court's requirement in recent Walker, in other decisions, that language itself, not a general kind of statutory gestalt, is what the Court looks at to find the General Assembly's waiver of sovereign immunity. As to the point that the statute mentions any legislative, any judicial or administrative proceeding, and therefore it's state action. Well, you can't have an administrative proceeding without the state. It's only a state ALJ who is being asked to decide questions like the one at issue here. But there are certainly proceedings that could occur under the Confidentiality Act involving, say, a husband and wife or two spouses arguing over a psychiatrist's notes. Those are two private parties going before the state. It's not, it doesn't mean that we have a waiver of sovereign immunity because the word state is mentioned elsewhere in the provision. Your Honors, we stand on our briefs on the control room unless there are any questions. And I would be remiss because my client, Mr. Booker, is in the courtroom today. I've never met him face-to-face. If I didn't mention that going to the court of claims would have been an option conceivably for plaintiffs had they done so in a timely fashion. The record does not disclose if they avail themselves of that opportunity. There are statutes of limitations, of course, so I say this with that caveat. And if the court has no further questions, we ask you to reverse the appellate court and hold that sovereign immunity precluded plaintiffs from obtaining attorney fees under the Act. Thank you. Thank you, Counsel. This is agenda number 8, number 130033, Terrence Lowery versus the Department of Financial and Professional Regulation. This case will be taken under advisement, and thank you both for your argument.